**Bernice K. CONNOLLY, as the Administrator of the Estate of Robert F. Connolly, deceased, Plaintiff-Appellee,**

v.

**WABASH RAILROAD COMPANY, a Missouri corporation, Defendant-Appellant.**

**No. 14693.**

United States Court of Appeals Seventh Circuit.

March 2, 1965.

Rehearing Denied April 5, 1965.

Charles H. Weiland, Gordon R. Close, Chicago, Ill., Lord, Bissell & Brook, Chicago, Ill., of counsel, for appellant.

Joseph T. McGuire, Chicago, Ill., Francis A. Boyle, Frank M. Perz, Chicago, Ill., of counsel, for appellee.

Before DUFFY, SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Wabash Railroad Company, a Missouri corporation, defendant, appeals from three orders of the district court entered in favor of Bernice K. Connolly, administrator of the estate of Robert F. Connolly, deceased, to wit: (1) order overruling defendant's motion for a directed verdict

of not guilty at the close of plaintiff's case, (2) order overruling defendant's motion for a directed verdict of not guilty at the close of all the evidence and (3) order entering judgment in favor of plaintiff and against defendant in the sum of $10,000 and costs. Defendant asks that the judgment be reversed.

In this diversity action under the Illinois Wrongful Death Act, §§ 1, 2, ch. 70, Ill.Rev.Stat. (1963), it was stipulated in the district court that plaintiff's intestate, Robert F. Connolly, aged 14 years and 9 months, while crossing defendant's tracks at their intersection with 95th Street in the Village of Oak Lawn, Illinois, in daylight, when visibility was good and when accompanied by three other boys, was walking easterly along the north side of said street a short distance behind two girls. Defendant has two tracks at the intersection. At the crossing there were installed and working three automatic gates equipped with flasher lights and automatic bells. The automatic gates referred to do not extend over the sidewalks. As the six young people, the two girls and then the group of four boys, approached the crossing the defendant's train No. 110, the Banner Blue Domeliner northbound to Chicago from St. Louis, Missouri, also approached the crossing. The lead locomotive of this train was operated by two of defendant's employees, L. H. Goodwin, engineer, and J. P. Boys, fireman. As the train came toward the Oak Lawn crossing at 95th Street and 51st Avenue, its horn was blowing and its headlights and front revolving light were operating. The two girls got across the tracks, and the four boys, running to the east, passed over the closer of the two tracks and three of them got across the second track. The last boy, Robert, was hit by the lead locomotive of train No. 110 and killed.

The errors relied on by defendant arise out of the court's failure to grant defendant's motions to direct a verdict for defendant, and involve questions as to the sufficiency in law of plaintiff's case.

At the trial plaintiff introduced the testimony of Fred Dumke, mayor of Oak Lawn, that Oak Lawn's 1960 population was about 28,000, that it had 12 to 15 schools, that 95th Street is its main artery and is there a part of U. S. Highway 12–20 and was the location of Oak Lawn's business district.

Plaintiff also introduced the testimony of Paul Zima, 18 years old at the time of the trial. He was one of the four youths crossing the tracks at the time in question. The others were the deceased, Tom Covas and Jack Hobbs. He stated that as the four boys started toward the tracks a bell started clanging and they started running. As he "made it across", he turned around and looked "and it appeared that Bob had already made it across the tracks and then the train came and hit Bob". When decedent was struck his body hit Hobbs and also one of the two girls who had crossed the tracks earlier. Zima first saw the girls after the accident was over. He did not recall the deceased hesitating or stopping.

Plaintiff also introduced portions of the testimony of L. H. Goodwin, engineer of the train in question, calling him as an adverse witness, who testified, *inter alia*, that he was traveling on the easternmost track and was northbound and that these children were to the left "when I first saw them." He said that two girls ran across the tracks from the left; going from west to east, they ran ahead of the boys across the path of the train.

Goodwin further testified that he first saw the children when he was at a point, which a plat in evidence tends to prove was about 1450 feet from the point of impact, and he started blowing short blasts of the whistle by jerking a cord. The speed of the train was then about 75 miles per hour. He said that the train collided with the last child. He explained:[1] " * * * Boys and girls, they were following pretty close together. As to whether this was in terms of 5 or 10 feet apart, something like that. So that there were about equal spaces be-

---

1. According to defendant's appendix.

tween them. * * * The part of the train which touched the child first was the right front end of it. * * * As to whether in other words he *almost made it,* that's right, he almost." (Italics supplied.)

Goodwin further testified that he applied the brakes in emergency when he was about 300 feet from the children. He did not cut the throttle before he applied the brakes.

Defendant contends that the evidence fails to show that plaintiff's intestate exercised due care and caution for his own safety at and immediately prior to the accident and further contends that there was no legal evidence to show any negligence on the part of defendant or that the alleged negligence of defendant was the proximate cause of the accident. Hence, defendant argues that under Illinois law it was entitled to a directed verdict or to a judgment notwithstanding the verdict.

The question of whether defendant was negligent and whether, if so, that negligence was the proximate cause of the accident, as well as the question of whether plaintiff's intestate was guilty of contributory negligence, were questions of fact for the jury, which have been answered by its verdict. We are confronted with a question of law as to whether the evidence is so clearly in favor of defendant on these issues of fact that we should hold as a matter of law as defendant contends.

■ These children were passing over the railroad's right of way at its inter-section with a public street. The site was not in open rural territory but upon a well-established traffic highway in a part of the business section of a municipality of 28,000 population. Weather conditions were clear and visibility was good. We cannot say as a matter of law that there was no legal evidence of negligence on the part of defendant proximately causing the accident. Nor can we say as a matter of law that plaintiff's intestate failed to exercise due care and caution for his own safety at and immediately prior to the accident.[2]

In arriving at this conclusion we cannot overlook the conduct of the railroad engineer who was propelling his train toward this crossing at a speed of 75 miles per hour and who, when he became aware that plaintiff and the other children were crossing the tracks, did nothing immediately to slacken the speed of the train but merely sounded the whistle. It was not until he was only 300 feet from the children that he made an attempt to slow down the train by applying the brakes. It was then too late.

■ For these reasons, the judgment of the district court is affirmed. As to the appeal of defendant from the orders of the district court overruling its motions for a directed verdict of not guilty[3] at the close of plaintiff's case and at the close of all the evidence, said appeal is dismissed. These orders were not appealable.

Judgment affirmed; and appeal dismissed in part.

2. The controlling principles of law are so well known that it is unnecessary to cite the Illinois court decisions recognizing them.

3. Said point was made by plaintiff *pendente lite* in this court and was there denied, but was reasserted by plaintiff in its brief.